**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| CORONA BORDEN, ) | |
| ) | CASE NO. 1:13-cv-2211 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE CHRISTOPHER A. BOYKO |
| ) | |
| ) | MAGISTRATE JUDGE GREG WHITE |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | **REPORT & RECOMMENDATION** |
| ) | |
| Defendant. ) | |

Plaintiff Corona Borden ("Borden") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be AFFIRMED.

**I. Procedural History**

On April 1, 2011, Borden filed an application for SSI alleging a disability onset date of July 1, 2007. (Tr. 18.) Her application was denied both initially and upon reconsideration. *Id*.

On March 22, 2012, an Administrative Law Judge ("ALJ") held a hearing during which Borden, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 18.) On June 6, 2012, the ALJ found Borden was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 28-29.) The ALJ's decision became final when the Appeals Council denied further review.

## II.  Evidence

*Personal and Vocational Evidence*

Age forty-eight (48) at the time of her administrative hearing, Borden was a "younger" person under social security regulations.  *See* 20 C.F.R. § 416.963(c).  (Tr. 28.)  Borden has a high school education and past relevant work as a data entry clerk.  (Tr. 27-28.)

## III.  Standard for Disability

A disabled claimant may be entitled to receive SSI benefits.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.  The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity."  Second, the claimant must suffer from a "severe impairment."  A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §416.920(d)(2000).  Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled.  For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

## IV.  Summary of Commissioner's Decision

The ALJ found Borden established medically determinable, severe impairments, due to asthma, chronic obstructive pulmonary disease (COPD), anxiety disorder (post-traumatic stress disorder), somatoform disorder, affective disorder, and frontal headaches.  (Tr. 20.)  However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (Tr. 21.)  Borden was found incapable of performing her past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a limited

range of sedentary work. (Tr. 23, 27.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Borden was not disabled. (Tr. 28-29.)

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if

supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

*Treating Physician Rule*

In her first assignment of error, Borden argues that the ALJ violated the treating physician rule by ascribing greater weight to non-examining State Agency physicians over the opinions of treating physicians and therapists. (ECF No. 15 at 4-8.) The Commissioner asserts that the opinions referenced by Borden do not come from "acceptable medical sources" as defined by the regulations, and, therefore, were not entitled to be accorded the deferential weight assigned to treating source opinions. (ECF No. 16 at 13-16.) Furthermore, the Commissioner argues that the opinions as to the ultimate issue of disability are not "medical opinions" as they are expressly reserved to the Commissioner. *Id*.

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 2006 WL 2271336 at * 4 (6th Cir. Aug. 8, 2006); 20 C.F.R. § 404.1527(c)(2). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled

4

to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 2006 WL 2271336 at * 4 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.)  Indeed, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[1]

If the ALJ determines a treating source opinion is not entitled to controlling weight, "the ALJ must provide 'good reasons' for discounting [the opinion], reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers*, 486 F.3d at 242 (quoting Soc. Sec. Ruling 96-2p, 1996 SSR LEXIS 9 at * 5).  The purpose of this requirement is two-fold. First, a sufficiently clear explanation "'let[s] claimants understand the disposition of their cases,' particularly where a claimant knows that his physician has deemed him disabled and therefore 'might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Id*. (quoting *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 544 (6th Cir. 2004)).  Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544.  Because of the significance of this requirement, the Sixth Circuit has held that the failure to articulate "good reasons" for discounting a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

Nevertheless, the opinion of a treating physician must be based on sufficient medical

---

[1] Pursuant to 20 C.F.R. § 404.1527(c)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406. The ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). According to 20 C.F.R. § 404.1527(d)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability. This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id.* It is the Commissioner who must make the final decision on the ultimate issue of disability. *Duncan*, 801 F.2d at 855; *Harris*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

The essence of Borden's argument is that the ALJ should have ascribed greater weight to the opinion of Roy A Szubski, a Licensed Independent Social Worker ("LISW") and Licensed Independent Chemical Dependency Counsel ("LICDC"), as well as the opinion of Rebecca Snider Fuller, an Advanced Practice Registered Nurse ("APRN"). (ECF No. 15 at 4-8.) The Commissioner is correct that neither of these individuals constitute an acceptable medical source under the regulations and, as such, their opinions do not constitute "medical opinions."

Mr. Szubski is a licensed social worker. A social worker is not an "acceptable medical source." *See* 20 C.F.R. § 416.913(a), (d); *Payne v. Comm'r of Soc. Sec.*, 402 Fed. App'x. 109, 119 (6th Cir. 2010) ("[S]ocial workers are not acceptable medical sources under social security regulations."); *Gustafson v. Comm'r of Soc. Sec.*, 2013 U.S. Dist. LEXIS 35828, 2013 WL 782864 at * 7 (W.D. Mich. Jan. 28, 2013). The opinion of a social worker is not entitled to any particular weight. *See Hayes v. Comm'r of Soc. Sec.*, 2011 U.S. Dist. LEXIS 71723, 2011 WL 2633945, at *6 (W.D. Mich. June 15, 2011) (collecting cases); *Gustafson*, 2013 U.S. Dist. LEXIS 35828, 2013 WL 782864 at * 7. It is also well-established that nurse practitioners, such

as Ms. Fuller, are not "acceptable medical sources." *See e.g. Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007); *Salyer v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 108672, 2012 WL 3156986 at * 5 (S.D. Ohio Aug. 3, 2012); *Wagner v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 102504, 2012 WL 3023266 at * 12 (N.D. Ohio July 24, 2012). Rather, a nurse practitioner is an "other source" pursuant to 20 C.F.R § 416.913(d)(1), which is neither entitled to controlling weight nor subject to the "good reasons" requirement of the treating physician rule.[2] *See* SSR 06-03p, 2006 SSR LEXIS 5 at *4, 2006 WL 2329939 at * 2; *Everett v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 121823, 2012 WL 3731388 at * 11 (S.D. Ohio Aug. 28, 2012).

As a social worker and nurse practitioner respectively, neither Mr. Szubski's or Ms. Snider's opinions regarding Borden's mental condition constituted the opinion of an acceptable medical source subject to controlling weight, 20 C.F.R. § 416.927(c)(2), but rather the opinions of an "other source." *See* 20 C.F.R. §416.913(d)(1) & (3) (the Commissioner *may* use evidence from other sources to show the severity of a claimant's impairment and how it affects the claimant's ability to do work). In SSR 06-3p, the Commissioner acknowledged that with the growth of managed health care in recent years, physicians' assistants and nurse practitioners

---

[2] Though Borden points out that Ms. Fuller's reports were co-signed by a psychiatrist, the Court finds this fact immaterial. (ECF No. 15 at 7.) Furthermore, a "team" opinion signed by physician and nurse practitioner does not qualify as a treating source opinion when there is no evidence demonstrating that the statement presented to the ALJ represented the opinions of a team effort, or that the medical facility used a team approach to a claimant's mental health treatment. *Ceballos v. Astrue*, 2009 WL 2475472, *7-9 (D. Kan. Aug. 12, 2009); *see also Nichols v. Comm'r of Soc. Sec.*, 260 F.Supp.2d 1057, 1065 (D. Kan. 2003) (although a supervising physician signed the "other" medical source's opinion, the court declined to consider them a team because there was no evidence the "other" medical source was working closely under the physician's supervision, or had consulted with the physician, and the record did not indicate the physician had treated the claimant other than a mere signature on the report); *Metivier v. Barnhart*, 282 F.Supp.2d 1220, 1226-1227 (D. Kan. 2003) (declined to find a treating team and thus no treating source when there was no evidence of a close working relationship or active supervision between the physician and the "other" medical source, and only one mention of the physician in the treatment record); *Colson v. Barnhart*, 2003 WL 1092745, *2-3 (D. Me. Mar. 13, 2003) (refused to consider the nurse practitioner's opinion as a treating source opinion because "there is no indication in the nurse practitioner's records that she was working other than on her own in her treatment of the plaintiff.") Borden has not cited any evidence of record indicating that she was actually seen and treated by the co-signing psychiatrist on a regular basis.

have increasingly assumed a greater percentage of treatment and evaluation functions previously handled primarily by physicians and psychologists. For this reason, opinions from other medical sources, such as physicians' assistants and nurse practitioners "are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file." *see* SSR 06-03p, 2006 SSR LEXIS 5, 2006 WL 2329939 (Aug. 9, 2006). As explained in a recent decision of the Sixth Circuit Court of Appeals, "[a]n ALJ must consider other-source opinions and generally should explain the weight given to opinions for these 'other sources.' But other-source opinions are not entitled to any special deference." *Hill v. Comm'r of Soc. Sec.*, 2014 U.S. App. LEXIS 5848 (6th Cir. 2014) (internal citations and quotation marks omitted). The requirement that an ALJ consider and explain the weight ascribed to an "other source" is not a demanding standard. *See, e.g., Washington v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 101172 (W.D. Mich. Apr. 1, 2014); *Davis-Gordy v. Comm'r of Soc. Sec.*, 2013 U.S. Dist. LEXIS 140258 (W.D. Mich. Sept. 30, 2013).

>The ALJ addressed the relevant opinions as follows:
>
>In June 2011, treating counselor Roy A. Szubsky, LISW, completed a daily activities questionnaire concerning the claimant. (Exhibit B10F at 3-4.) He indicated in this report that the claimant has been unable to work due to posttraumatic stress disorder following a shooting that she witnessed in February 2011, and he has elsewhere stated that the claimant is unable to work or engage in any gainful employment. (Exhibits B10F at 3 and B12F at 1.) Mr. Szubsky also stated that the claimant has no problem preparing her food, completing her banking, and taking care of her hygiene, that she in fact takes pride in her presentation, that she enjoys shopping and is only limited in this regard by a lack of money, but that she needs assistance completing household chores due to her asthma. (Exhibit Bl0F at 4.) He also documented the claimant's statement that she had no problem getting along with others at work, that she was never fired, and that she was never disciplined. (Exhibit Bl0F at 3.) Mr. Szubsky then stated that the claimant's current medications have not controlled her panic attacks and that she experiences other symptoms such as sleep disturbance and irritation, but that it is "very possible" she had such symptoms before she witnessed the shooting, and that the "clinical impression implies that [she] had already been quite anxious prior to the crisis." (Exhibit Bl0F at 3.) Initially, the undersigned notes that determining whether a claimant is disabled is a function reserved to the Commissioner, and that Mr. Szubsky is not an acceptable medical source for the purpose of evaluating the claimant's functional abilities and limitations. (SSR 96-Sp and SSR 06-3p, respectively.) The undersigned affords less weight to Mr. Szubsky's statements that the claimant is unable to work due to her mental impairment because it is outside of his purview to make such a determination, such a conclusion is inconsistent with the claimant's actual functional abilities as listed throughout the rest of his reports, and these portions of his reports are consistent with the claimant's

8

> subjective complaints while being at odds with his objective observations. The undersigned affords great weight to his opinion that the claimant likely experienced increased anxiety before she witnessed a shooting in February 2011, as this is consistent with the claimant's mental health treatment records particularly to the extent that she treated for posttraumatic stress disorder before February 2011 due to a previous incident that occurred while she worked for the United States Postal Service. Finally, the undersigned affords great weight to Mr. Szubsky's assessment of the claimant's functional abilities as this is consistent with her reported abilities elsewhere in the record, such as her indicating that she can attend to all matters of personal hygiene. (Exhibit B5E.)
>
> In January 2012, Rebecca Snider Fuller, RN, APRN, BC, evaluated the claimant's mental ability across 21 work-related categories. (Exhibit B16F.) Ms. Fuller rated the claimant as "poor" in eight out of the 21 categories and as "fair to poor" in six of the 21 categories. (Exhibit B16F at 1-2.) Initially, the undersigned notes that Ms. Fuller is not an acceptable medical source for the purpose of evaluating the claimant's functional abilities. (SSR 06-3p.) However, the undersigned has carefully reviewed Ms. Fuller's opinion because she is one of the claimant's mental health treatment providers and her evaluation was cosigned by a medical doctor. Following this review, the undersigned finds that Ms. Fuller's opinion is inconsistent with the credible evidence of record. Although the claimant has endorsed significant symptoms throughout her treatment records, she generally presents with benign objective findings upon mental status examination and she has generally undergone only conservative treatment in the form of counseling and prescription medication with the exception of a six-day psychiatric hospitalization in April 2011. At the time of the claimant's psychiatric hospitalization, however, she related her heightened aggression and increased symptoms to a recent traumatic event in which she witnessed her daughter being shot in the leg while they were in their own home. (Exhibit B16F at 1.) Accordingly, the undersigned affords this assessment less weight.

(Tr. 26-27.)

Here, the above opinion reflects that the ALJ *considered* both Ms. Snider's and Mr. Szubski's opinions in resolving Borden's claim. Moreover, the ALJ thoroughly *explained* the reasons that she was assigning less weight to these opinions. The regulations do not require anything more. Finally, Borden also appears to argue that the ALJ erred by ascribing greater weight to the medical opinions of non-examining State Agency physicians than to the opinions of Ms. Snider and Mr. Szubski. (ECF No. 15 at 7.) Borden cites no law on this point. To be sure, in weighing and considering "medical opinions," the Commissioner generally gives more weight to examining than non-examining sources. 20 C.F.R. § 416.927(b) & (c)(1). However, the regulations define "medical opinions" as "statements from physicians and psychologists or other ***acceptable medical sources***..." 20 C.F.R. § 416.927(a)(2) (emphasis added). While nurse practitioners may constitute other medical sources pursuant to the regulations, their opinions

clearly do ***not*** constitute "acceptable medical sources," which are expressly identified as licensed physicians, psychologists, optometrists, podiatrists, and speech-language pathologists.  20 C.F.R. § 416.913(a)(1) through (a)(5).  Simply put, the regulations do not require the Agency to give greater weight to a non-medical opinion from an examining "other source" over the medical opinion of a non-examining physician or psychologist.  Conversely, a social worker is a non-medical source that falls into the category of public or private social welfare agency personnel. 20 C.F.R. § 416.913(d)(3).  Clearly, Mr. Szubski could not proffer a "medical opinion."

Borden's first assignment of error is without merit.

*Credibility Assessment*

Borden argues that the ALJ's credibility determination was not supported by substantial evidence.  (ECF No. 15 at 8-12.)  The Commissioner asserts that the ALJ applied appropriate legal standards in evaluating Borden's credibility and complied with 20 C.F.R. § 416.929.  (ECF No. 16.)

"There is no question that subjective complaints of a claimant can support a claim for disability, if there is also objective medical evidence of an underlying medical condition in the record." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003).  In many disability cases, the cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition.  20 C.F.R. § 416.929; *see, e.g., Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 686 (6th Cir. 1992) (noting that "this court has previously held that subjective complaints of pain may support a claim for disability").  When a claimant alleges symptoms of disabling severity, the ALJ must follow a two-step process for evaluating these symptoms.  First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment.  Second, the ALJ "must evaluate the intensity, persistence, and limiting effects of the symptoms."  SSR 96-7p.  Essentially, the Commissioner must (1) examine whether the objective medical evidence supports a finding of an underlying medical condition, and (2) whether the objective medical evidence confirms the alleged severity of the symptoms or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling symptoms.  *See Felisky v. Bowen,* 35 F.3d 1027,

1038-39 (6th Cir. 1994); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

If the claims are not substantiated by the medical record, the ALJ must make a credibility determination based on the entire case record. *Id*. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly. *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). Nonetheless, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for the weight." SSR 96-7p, Purpose section; *see also Felisky,* 35 F.2d at 1036 ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so"); *accord Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007) ("[B]lanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence.") Beyond medical evidence, there are seven factors that the ALJ should consider.[3] "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r of Social Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

---

[3] The seven factors are: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96–7p, Introduction; *see also Cross v. Comm'r of Soc. Sec.*, 373 F.Supp.2d 724, 732-733 (N.D. Ohio 2005) (stating that an ALJ, in a unified statement, should explain his or her credibility findings in terms of the factors set forth in the regulations, thereby permitting the court to "trace the path of the ALJ's reasoning.")

Here, the ALJ found that Borden had medically determinable impairments that could reasonably be expected to cause her alleged symptoms. (Tr. 24.) Nonetheless, the ALJ found Borden's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with the RFC finding. *Id.* She explained that Borden was less than credible for the following reasons:

> The extent of symptoms and limitations alleged by the claimant is discredited by multiple factors. First, the claimant has generally relied on relatively conservative treatment to address her mental impairments including attendance at counseling and the use of prescription medications such as Seroquel and Celexa. (Exhibits B2F, B6F, B7F, B9F, B15F, Bl7F, and B20F.) The claimant has undergone medical treatment on two separate occasions in April 2011 and January 2012 after reportedly trying to hurt and/or kill her daughter, and she also presented separately in April 2011 due to experiencing a panic attack. (Exhibits B3F, B4F, B5F, B6F, and B19F.) However, the claimant is generally described throughout her mental health treatment records as well-groomed, having good hygiene, being oriented, lacking suicidal or homicidal ideation, lacking signs of paranoia or delusions, having a full range of affect, and having fair insight and judgment. (Exhibits B20F at 1-2 and 12, B15F at 24 and 30, B9F at 5-6.) Moreover, the claimant had a GAF score of 85 at the time of her psychiatric discharge in April 2011, and she was further described as alert and oriented, calm and cooperative, having spontaneous and coherent speech, having improved mood, insight, and judgment, having linear thought process, and lacking suicidal or homicidal ideation, lacking auditory or visual hallucinations, and lacking signs of delusion. (Exhibit B6F at 4.) In short, the record consistently demonstrates that the claimant responds to the treatment she receives, even when she has experienced particularly acute periods of heightened symptomology related to the shooting incident that she witnessed in her own home.
>
> Second, and with regard to the claimant's asthma and chronic obstructive pulmonary disease, her treatment records consistently demonstrate positive objective findings upon examination except for when she is experiencing an exacerbation, such as when she has bronchitis. For example, treating physicians consistently describe her lungs as clear to auscultation and palpation, and her doctors describe this impairment as improved and stable even with her continued smoking of cigarettes. (Exhibits B2F at 3, 7, 10, 13, 15, 20, 25, 29, and 32, B3F at 5, B4F at 4, B7F at 1 and 16, B9F at 5, 17, and 19, B15F at 39 and 46, B19F at 7, and B20F at 7.) Moreover, a June 2011 pulmonary function study returned "essentially normal" results, and as of February 2012 the claimant's chronic obstructive pulmonary disease was once again assessed as stable on medications. (Exhibits B15F at 19 and B20F at 7.) In short, the objective findings of record and the claimant's positive response to treatment discredits the extent of symptoms and limitations she has alleged stemming from her asthma and chronic obstructive pulmonary disease. The undersigned has afforded weight to her subjective complaints to the extent of finding that she can perform a limited range of sedentary exertional work.
>
> Finally, the claimant's credibility is reduced by inconsistent statements of record, including statements addressing the February 2011 shooting that has resulted in her relatively recent allegations of significant symptoms and limitations stemming from posttraumatic stress disorder. Specifically, this traumatic event has been

> described as either a robbery at gunpoint, a scenario in which the shooter opened fire from inside the home, and a scenario in which the shooter shot into the home through an outside window. (Exhibits B6F at 4, B15F at 53 and 64, B12F at 4 and 18.) While such inconsistencies are not determinative of the ultimate outcome in this matter, it reduces the claimant's credibility particularly when the extent of her allegations are not fully supported by the objective findings of record or her response to treatment. The undersigned also notes that the claimant frequently brings up her application for supplemental security income throughout her treatment sessions, leading her treating counselor Roy Szubski, LISW, to note in July 2011 that she is "Focused on SSI Disability." (Exhibit B12F at 32 and throughout.) While such comments are once again not determinative of the ultimate issue as to whether the claimant is disabled, it raises a question as to motivation by secondary gain particularly when the objective findings of record and the claimant's response to treatment do not fully support her allegations. Ultimately, each of the foregoing factors serves to discredit the extent of symptoms and limitations that the claimant has alleged.

(Tr. 24-25.)

Borden fails to demonstrate that the ALJ's credibility assessment was not supported by substantial evidence. Instead, she takes issue with the ALJ's characterization of her psychiatric treatment as conservative, suggests that inconsistent descriptions of a shooting incident may be the result of inaccurate recording by treating sources or the product of PTSD, and points to her own self-reported statements that she experienced visual and auditory hallucinations, as well as statements made by social worker, Mr. Szubski, regarding her inappropriate behaviors.[4] (ECF No. 17 at 10-12.)

The Court finds the ALJ did not improperly assess Borden's credibility. As set forth in the decision, *supra*, the ALJ fully considered the medical evidence and hearing testimony. The decision provides a number of specific reasons for finding Borden to be less than fully credible, including her positive response to treatment and medication, despite heightened symptomology after the shooting incident. (Tr. 24-25.) The ALJ also noted the repeated instances of unremarkable findings on mental status examination. (Tr. 24.) In addition, the ALJ noted Borden's inconsistent reporting and preoccupation with obtaining SSI during counseling sessions – a possible indication that she was motivated by secondary gain. (Tr. 25.) Finally,

---

[4] Borden does not appear to dispute the ALJ's credibility assessment as it relates to her physical impairments, as she only takes issue with limitations stemming from her mental impairments. (ECF No. 15 at 10-12.)

13

while not contained in the credibility analysis section of the decision, the ALJ earlier noted Borden's lack of difficulty in accomplishing activities of daily living such as personal hygiene, shopping, cooking, taking public transportation, and handling finances. (Tr. 21.) The ALJ also noted Borden's own statement that she had "never lost a job due to problems getting along with others." (Tr. 22.)

Thus, in reaching her credibility determination, the ALJ considered several of the factors set forth in SSR 96-7p, 1996 SSR LEXIS 4. The ALJ need not analyze all seven factors, but should show that he considered the relevant evidence. *See Cross*, 373 F. Supp. 2d at 733; *Masch v. Barnhart*, 406 F. Supp. 2d 1038, 1046 (E.D. Wis. 2005). Borden does not identify any error in the ALJ's application of the legal standards governing the manner in which a claimant's credibility is analyzed, but rather offers a different interpretation of the evidence of record. However, it is not this Court's role to "reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 2011 WL 1228165 at * 2 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)). The ALJ addressed several of the relevant factors and provided sufficient reasons for her credibility determination, which were supported by specific references to the evidence in the record. As such, Borden's second assignment of error is without merit.

## VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision should be AFFIRMED and judgment entered in favor of the defendant.

s/ Greg White<br>
United States Magistrate Judge

Date: August 25, 2014

**OBJECTIONS**
Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).