UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **CORONA BORDEN,** | ) | **CASE NO. 1:13CV2211** |
| | ) | |
| Plaintiff, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| vs. | ) | **OPINION AND ORDER** |
| | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY ADMINISTRATION,** | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Objections of Plaintiff Corona Borden to the Magistrate Judge's Report & Recommendation, recommending that the Court adopt the Administrative Law Judge's ("ALJ") findings and deny Plaintiff's claim for Disability Insurance Benefits. (ECF DKT #19). For the following reasons, the Court ADOPTS the Magistrate Judge's Report & Recommendation and AFFIRMS the Commissioner's denial of Plaintiff's claims.

**I. FACTS**

Neither Plaintiff nor Defendant has contested the facts in the Magistrate Judge's Report & Recommendation. Accordingly, all facts from the Report & Recommendation are incorporated herein.

**A. Procedural Background**

Plaintiff filed an application for SSI on April 21, 2011 alleging a disability onset date of July 1, 2007. However, because a final determination had been made on an earlier claim, the relevant onset date is April 2, 2011.

On March 22, 2012, an ALJ held a hearing on the matter.  (Tr. 18).  Both Plaintiff, represented by counsel, and an impartial vocational expert ("VE") testified.  *Id.*.  On June 6, 2012, the ALJ delivered her decision and found Plaintiff was able to perform a significant number of jobs in the national economy and, therefore, was not disabled.  (Tr. 28-29).  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final.  (Tr. 6-10).  Plaintiff filed the instant case on October 7, 2013. (ECF DKT #1).

**B.  Factual Background**

*General*

Plaintiff completed a Daily Activities Questionnaire in June 2011.  The ALJ indicated that Plaintiff had mild restriction in activities of daily living.  *Id.* at 21.  Plaintiff's daughter performs all of the house and yard work, including cooking and shopping.  *Id.*.  Plaintiff also alleged being limited in part due to dizziness caused by her medicine, having increased fatigue and having lost interest.  *Id.*.  However, Plaintiff reported in the June 2011 Function Questionnaire that she had no problem attending to matters of personal care such as dressing, bathing, caring for her hair, shaving and feeding herself, that she does not require reminders and that she is able to manage her finances.  The ALJ also indicated that Plaintiff has moderate difficulties in social functioning.  *Id.* at 22.  In the June 2011 Questionnaire, Plaintiff stated that she speaks with her daughter or sister daily and attends Church weekly.  *Id.*.  She also stated that she has never lost a job due to problems getting along with others.  *Id.*.  However, the ALJ noted that Plaintiff's treatment records contained a pattern of fighting with her daughter that can escalate to physical violence.

*Shooting Incident*

In February 2011, Plaintiff was present in an incident where her daughter was shot in the leg in her own home.  (Tr. 24).  Plaintiff testified that "she experiences heightened paranoia, mood swings, racing thoughts, flashbacks, nightmares, and panic attacks following" the attack.  *Id.*.  Plaintiff also claimed that she "experiences poor sleep, and even with a sleep aid stated that she still only sleeps for four to six hours some nights."  *Id.*.  In addition, Plaintiff also testified that "she experienced a nervous breakdown due to the" shooting and "required psychiatric hospitalization because she was trying to harm her daughter."  *Id.*.  Plaintiff also claimed that she "relapsed in January 2012 although she only required treatment at the emergency department that day and was released."  *Id.* (internal quotations omitted).  The ALJ noted that Plaintiff's "credibility is reduced by inconsistent statements of record, including statements addressing the February 2011 shooting."  *Id.* at 25.  Specifically, the ALJ noted that Plaintiff described the incident "as either a robbery at gunpoint, a scenario in which the shooter opened fire from inside the home, and a scenario in which the shooter shot into the home through an outside window."  *Id.*.

*<u>Medical Assessments</u>*

Plaintiff has undergone several assessments related to the current matter, as well as the prior application, and all are referenced to and analyzed in the ALJ's decision.  In June 2009, Plaintiff underwent a psychological consultative examination by Dr. Jeffrey Rindsberg in connection with her prior application for disability benefits.  *Id.* at 26.  The ALJ found that "the claimant is subject to a greater degree of limitation than Dr. Rindsberg set forth."  *Id.*.  In June 2011, Roy A. Szubski, a Licensed Independent Social Worker and Licensed Independent Chemical Dependency Counselor, "completed a daily activities questionnaire concerning the

claimant." *Id.*  In July 2011 and September 2011, "State Agency medical consultants evaluated the claimant's physical functioning", *id.* at 25, while "State Agency psychological consultants evaluated the claimant's mental status", *id.* at 26.  Finally, in January 2012, Plaintiff's "mental ability across 21 work-related categories" was evaluated by Rebecca Snider Fuller, an Advanced Practice Registered Nurse.  *Id.* at 27.

## II. LAW AND ANALYSIS

### A.  Standard of Review

#### 1.  Rule 72(b)

Rule 72(b)(3) of the Federal Rules of Civil Procedure provides that the "district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3) (emphasis added).  *See also* 28 U.S.C. § 636(b)(1).  The district judge "may accept, reject, or modify" the recommendations made by the Magistrate Judge.  *Id.*.  The district judge must review only specific objections and the factual and legal issues so related to those specific objections.  *Futo v. Smith*, 2011WL1811071, *4 (N.D. Ohio 2011).  *See also Thomas v. Arn*, 474 U.S. 140, 147 (1985).  Further, where a party has failed to "properly object[] to" any matters, the district judge shall review "the Report and Recommendation only for clear error."  *Renelique v. Doe*, No 99-10425, 2003WL23023771, *1 (S.D.N.Y. Dist. Ct. 2003).

#### 2.  The Standard of Review Concerning the ALJ's Findings

The district judge must determine whether the final decision of an ALJ is supported by substantial evidence and is based upon proper legal standards.  *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *Elam ex rel. Golay v. Commissioner of Social*

*Security*, 348 F.3d 124, 125 (6th Cir. 2003); *Fleischer v. Astrue*, 774 F.Supp.2d 875, 876 (N.D. Ohio 2011). In other words, it is not necessary that the reviewing court agree with the decision of the ALJ. *Id.*. The reviewing court is not seeking to determine whether or not the ALJ made the correct decision; but rather, the reviewing court is seeking to determine whether or not the decision made by the ALJ is supported by substantial evidence from the record. *Id.*. In fact, so long as substantial evidence supports the decision of the ALJ, "that [decision] must be affirmed, even if substantial evidence also exists in the record to support [a contrary decision]." *Fleischer*, 774 F. Supp.2d at 877. *See also White v. Commissioner of Social Sec.*, 572 F.3d 272, 281-282 (6th Cir. 2009) ("[A]dministrative findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion .. .") (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir.1994)). This standard encompasses the notion that there is a "zone of choice within which the [ALJ] may proceed without interference from the courts [and if] the decision is supported by substantial evidence, a reviewing court must affirm." *Id.*

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F. 3d 284, 286 (6th Cir.1994). *See also Fleischer*, 774 F.Supp.2d at 877 (quoting *McGlothin v. Comm'r of Soc. Sec.*, 299 Fed.App'x. 516, 521 (6th Cir. 2008). *See also Eslinger v. Commissioner of Social Sec.*, 476 Fed.App'x. 618 (6th Cir. 2012) (finding that substantial evidence existed where "the ALJ assigned full weight to the opinions of [one Doctor], little weight to [another], and less weight to those of [another]", *id.* at 620);

*Stankoski v. Astrue*, 532 Fed.Appx. 614 (6th Cir. 2013) (finding that there was "ample evidence in the record to support the Commissioner's finding that none of the plaintiff's impairments were disabling in the Social Security context", *id.* at 620). *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011) (finding that "the ALJ's decision that claimant was not disabled was not supported by substantial evidence", *id.*, in light of the ALJ's failure to provide good reasons for weight actually assigned to opinion of claimant's treating physician.).

Essentially, in reviewing the decision of the ALJ, the District Court must take a three-step approach. This approach is, of course, top-loaded, with the first step being the most essential and containing the overall substantively important content of the test. First, the Court must determine whether there is substantial evidence in the record to support the ALJ's findings of fact. *Rogers*, 486 F.3d at 241; *Elam*, 348 F.3d at 125; *Fleischer*, 774 F.Supp.2d at 876. Second, the Court must determine whether proper legal standards were applied. *Eslinger*, at 620 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-45 (6th Cir. 2004). Third, the Court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer*, 774 F.Supp.2d at 877.

**B. Plaintiff's Objections To Report & Recommendation**

**1. Objection: The ALJ Adopted The Opinions Of Non-Examining State Agency Psychological Consultants Whose Opinions Were Rendered Without A Complete Picture Of The Plaintiff's Physical And Mental Health.**

Plaintiff argues that the ALJ, and subsequently the Magistrate Judge, improperly

adopted the opinions of the State Agency psychological consultants. However, the ALJ only adopted those findings by the State Agency psychological consultants that she found were supported by the record. For example, the ALJ found that the assessments were "consistent with the evidentiary record as a whole including the claimant's receipt of relatively conservative treatment and positive objective findings throughout her mental health treatment records." (Tr. 26). Because the assessments were consistent with the record as a whole, the ALJ afforded greater weight to them. In contrast, State Agency medical consultants also evaluated the claimant's physical functioning at the same time and "opined that [the claimant] was capable of performing light exertional work subject to environmental limitations." *Id.* at 25. However, because these assessments were inconsistent with the record as a whole and the complainant "still experience[d] significant physical limitations even when complying with treatment", the ALJ afforded less weight to them. *Id.*.

The ALJ did not adopt the opinions of the state physicians over those of Ms. Fuller; but merely found that Fuller's review and opinion was "inconsistent with the credible evidence of the record." *Id.* at 27. Fuller evaluated the claimant's mental ability across twenty-one work-related categories and rated the claimant as "poor" in eight out of twenty-one categories and as "fair to poor" in six of the twenty-one categories. *Id.*. However, the ALJ did not find that this opinion was "[]consistent with the credible evidence of record." *Id.*. The ALJ elaborated on this by stating that the claimant "generally presents with benign objective findings upon mental status examination and she has generally undergone only conservative treatment." *Id.*. The ALJ also noted that "[a]t the time of the claimant's psychiatric hospitalization. . . .she related her heightened aggression and increased symptoms

to a recent traumatic event in which she witnessed her daughter being shot in the leg while they were in their own home." *Id.*. Accordingly, Fuller's opinion was afforded less weight by the ALJ.

In addition, the ALJ also afforded different weights to different portions of Mr. Szubski's opinion. *Id.* at 26-27. Initially, the ALJ afforded "less weight to Mr. Szubski's statements that the claimant is unable to work due to her mental impairment because it is outside of his purview to make such a determination, such a conclusion is inconsistent with the claimant's actual functional abilities listed throughout the rest of his reports, and these portions of his report are consistent with the claimant's subjective complaints while being at odds with his objective observations." *Id.*. In contrast, the ALJ afforded "greater weight" to two other portions of Mr. Szubski's opinion. *Id.* at 27. First, the ALJ afforded "great weight to his opinion that the claimant likely experienced increased anxiety before she witnessed a shooting in February 2011, as this is consistent with the claimant's mental health treatment records." *Id.*. Second, the ALJ afforded "great weight to [his] assessment of the claimant's functional abilities as this is consistent with her reported abilities elsewhere in the record, such as her indicating that she can attend to all matters of personal hygiene." *Id.*. Accordingly, a portion of Mr. Szubski's opinion was afforded less weight while other portions were afforded great weight by the ALJ.

"State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence." *Hoskins v. Commissioner of Social Sec.* 106 Fed.App'x. 412, 415 (6th Cir. 2004). Accordingly, the ALJ adopted and relied upon those assessments and opinions that were supported by the evidence

and rejected those assessments and opinions that were not supported by the evidence.

**2. Objection: If Significant Evidence Is Developed After The Date That The Record Is Considered By The State Agency Physician, Reliance Upon That Opinion Is Improper**.

Plaintiff relies upon *Rogers* to argue that where "significant evidence is developed after the date that the record is considered by the state agency physician, reliance upon that doctor's opinion is improper, since the non-examining source must have a complete medical snapshot when reviewing a claimant's file." (ECF DKT #19 at 2). However, the current case can be distinguished from *Rogers*. In *Rogers*, the ALJ disagreed with the opinions of two treating physicians, who combined, had been treating the claimant for more than twenty years. *Rogers*, 486 F.3d at 245. More significantly, the ALJ failed to provide an analysis of the factors to be considered in determining the weight accorded the opinions of the claimant's two treating physicians. *Id.*. In addition, a significant amount of time had passed, at least six years, between one state physician's review of the claimant's medical history and the ALJ's decision. *Id.*. Accordingly, that state physician had "offered medical opinions without the benefit of observing later symptoms or reviewing subsequent treatment notes." *Id.*.

The current case is distinguishable and the Magistrate Judge thoroughly examines this aspect in his Report & Recommendation. (ECF DKT #18 at 4-10). First, neither Mr. Szubski nor Ms. Fuller "constitute an acceptable medical source under the regulations and, as such their opinions do not constitute 'medical opinions.'" *Id.* at 6. In *Rogers*, the opinions of both individuals that had been discounted did constitute "medical opinions." Second, the time both Fuller and Szubski treated Plaintiff comes nowhere close to the amount of time that the two

physicians in *Rogers* had treated that claimant. The contrast in time period is from a few years to "more than twenty years." *Rogers*, 486 F.3d at 244. Finally, as the Magistrate Judge noted in his Report & Recommendation, the ALJ in the current case not only "considered both [Mr. Szubski's and Ms. Fuller's] opinions" but also "thoroughly *explained* the reasons that she was assigning less weight to these opinions." (ECF DKT #18 at 9). As pointed out in *Rogers,* the ALJ failed "to provide an analysis of the factors to be considered in determining the weight accorded the opinion[]." *Rogers*, 486 F.3d at 245. Therefore, the current case can be clearly distinguished on its facts from *Rogers*.

### III. CONCLUSION

In sum, Plaintiff, Corona Borden, failed to demonstrate that the ALJ erred in adopting the opinions of non-examining State Agency psychological consultants. Further, Plaintiff failed to demonstrate that the decision of the ALJ was unsupported by substantial evidence in the record.

For the foregoing reasons, the Court ADOPTS the Magistrate Judge's Report & Recommendation and AFFIRMS the Commissioner's denial of Plaintiff's claims.

**IT IS SO ORDERED.**

             s/ Christopher A. Boyko
             **CHRISTOPHER A. BOYKO**
             **United States District Judge**

Dated: December 19, 2014